UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LUIS ZAYAS,

    Plaintiff,

v.　　　　　　　　　　　　　　　　　　Case No: 6:12-cv-1553-Orl-31TBS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Luis Zayas appeals to the District Court from a final decision of the Commissioner of Social Security ("Commissioner") denying his application for benefits. Plaintiff contends that the administrative law judge ("ALJ") erred by: (1) relying on a vocational expert's ("VE") testimony which was inconsistent with the Dictionary of Occupational Titles ("DOT"); (2) relying on the VE's testimony because it was based on the DOT which is out of date and unreliable; (3) relying on the VE's testimony concerning the number of available jobs Plaintiff could perform; and (4) failing to consider Plaintiff's obesity. I respectfully recommend the Court **AFFIRM** the Commissioner's final decision.

### I. Background

When his case went to administrative hearing, Plaintiff was 55 years old, five feet seven inches tall, and he weighed about 201 pounds. (Doc. 17, p. 2-3). He has a high school education and 10 weeks of trade school in the printing business. (Doc. 12-2, p. 25-26). His last employment, which ended prior to his November 1, 2007 alleged onset date, was as a printer. (Id., p. 25). The ALJ found that Plaintiff is severely impaired by chronic obstructive pulmonary disease ("COPD") and asthma, but he still has the residual

functional capacity to perform light work, except he cannot work where he would be exposed to excessive amounts of pulmonary irritants such as dust, fumes and gases. (Id. p. 11-12). The ALJ determined that Plaintiff was capable of performing his past relevant work as an offset print operator or alternatively, that Plaintiff could work as a stocker, packager, or server's assistant.[1] (Id. p. 15). Based on these findings the ALJ concluded that Plaintiff was not under a disability from his alleged onset date through the date of the ALJ's decision. (Id.). The Appeals Council denied Plaintiff's request for review, and he timely filed this action. (Doc. 17, p. 2).

## II. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the ALJ's findings are supported by substantial evidence. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004). The ALJ's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla but less than a preponderance. It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).

When the Commissioner's decision is supported by substantial evidence the district court will affirm even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). The

---

[1] Although the VE testified that Plaintiff could perform the job of stocker, the Commissioner concedes that under the DOT this job requires heavy exertion which exceeds the limitations in Plaintiff's residual functional capacity. (Doc. 19 at 16 n.4). Therefore, I have not considered the job of stocker in my analysis.

district court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" Id. "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (per curiam); accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine the reasonableness of the factual findings).

There is a presumption in favor of the ALJ's findings of fact but no such presumption attaches to the ALJ's conclusions of law. Welch v. Bowen, 854 F.2d 436, 438 (11th Cir. 1988) (per curiam). The Court will reverse a final decision if the ALJ incorrectly applied the law or failed to provide sufficient reasoning for the Court to determine whether the ALJ properly applied the law. Keeton v. Dep't of Health & Human Serv's, 21 F.3d 1064, 1066 (11th Cir. 1992). When it reviews the Commissioner's final decision, the Court is authorized to "enter . . . a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a hearing." 42 U.S.C. § 405(g).

### III. Discussion

#### A. Alleged Inconsistency between VE's testimony and the DOT

The VE testified that the DOT classifies Plaintiff's past work as an offset pressman as "light," and that Plaintiff could perform the job as it is generally performed "as far as the DOT is concerned." (Doc. 12-2, p. 41-42). The DOT states that an offset press operator "[p]eriodically washes cylinders with solvent" and "may clean spears and spots from rejects with solvent[.]" DOT, § 651.685-018, 1991 WL 685709 (4th ed. 1991). Plaintiff argues that because the ALJ decided he cannot be exposed to excessive amounts of

pulmonary irritants, the VE's testimony is necessarily inconsistent with Plaintiff's residual functional capacity and the DOT. Plaintiff's argument is not persuasive.

The ALJ posed a hypothetical to the VE which included a limitation of exposure to "excessive" amounts of pulmonary irritants. (Tr. 40). The DOT's description of an offset press operator says that the job may include "periodic" exposure to solvent. 1991 WL 685709. Periodic exposure is less than excessive exposure, and therefore there is no conflict between the VE's testimony and Plaintiff's residual functional capacity or the DOT.

Assuming for argument's sake that Plaintiff is correct, the Commissioner's final decision should still be affirmed on this ground. Social Security Ruling 00-4p states:

> Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between the VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled. At the hearing level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record as to whether or not there is such consistency.

An ALJ complies with SSR 00-4p by inquiring on the record whether the VE's testimony conflicts with the DOT. If the VE answers that there is no conflict, the ALJ may rely on the VE's testimony and need not perform an independent investigation. Garskof v. Astrue, No. 5:07-cv-288-Oc-GRJ, 2008 WL 4405050 *6 (M.D. Fla. Sept. 26, 2008). Here, the ALJ asked the VE if his testimony was consistent with the DOT and the VE said it was. (Doc. 12-2, p. 42-43).

In addition, at the hearing Plaintiff's attorney did not identify any conflict between the VE's testimony and his client's residual functional capacity or the DOT. (Id., p. 43-

45). Counsel also declined the opportunity to question the VE. (Id., p. 43-44). The ALJ is not required to resolve a conflict that is not identified at the hearing or is not otherwise apparent. Ortiz v. Comm'r of Soc. Sec., 6:10-cv-678-Orl-GJK, 2012 WL 603223 *8 (M.D. Fla. Feb. 24, 2012) (citing Kelley v. Astrue, 2009 WL 2731341 *7 (M.D. Fla. Aug. 26, 2009); Brijbag v. Astrue, 2008 WL 276038 (M.D. Fla. Jan. 31, 2008)). And, if there was a conflict between the VE's testimony and the DOT, the Eleventh Circuit holds that "the VE's testimony 'trumps' the DOT." Jones v. Apfel, 190 F.3d 1224, 1229 -30 (11th Cir. 1999); Jones v. Comm'r of Soc. Sec., 423 F. App'x 936, 939 n.4 (11th Cir. 2011) (noting that the Eleventh Circuit is bound by Jones v. Apfel and not by SSR 00-4p, which states that neither the DOT nor the VE's testimony trumps the other). In sum, there was no apparent conflict before the ALJ, who was not required to inquire further and was permitted under Jones v. Apfel to rely exclusively on the VE's testimony. Therefore, the ALJ properly relied on the VE's testimony.

Even if the ALJ committed error by incorrectly finding the VE's testimony consistent with the DOT, the Eleventh Circuit has previously held such error was harmless. Jones v. Comm'r of Soc. Sec., 423 F. App'x at 939 (citing Jones v. Apfel, 190 F.3d at 1229 -30) (finding any error harmless because "the ALJ was permitted to base his findings about these three jobs exclusively on the VE's testimony, irrespective of any inconsistency with the DOT, and was not required to seek further explanation."). Thus, even if there was a conflict, it is not a valid basis to reverse the Commissioner's final decision.

Plaintiff argues that in making his decision the ALJ should have relied on more up-to-date information from the Occupational Information Network ("O*NET"). O*NET is a database created by the Employment and Training Administration of the US Department

of Labor which contains information on hundreds of standardized and occupation-specific descriptors. The database is continually updated by surveying a broad range of workers from each occupation. The O*NET content model defines the key features of an occupation as a standardized, measurable set of variables. The model starts with six domains which describe the day-to-day aspects of the job and the qualifications and interests of the typical worker. The model expands from there to 277 descriptors. The O*NET-SOC taxonomy currently includes 974 occupations; the last revision of which was in 2010. www.onetcenter.org/overview.html (last visited on Sept. 26, 2013). According to O*NET, "printing press operators" are frequently exposed to pollutants, gases, dust, or odors. (See Docs. 17-7, 17-8 at 2).

     The VE did not testify about O*NET and the ALJ did not consider O*NET in reaching his decision. In determining a sentence four remand the court "is limited to the certified administrative record in examining the evidence." See Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1267-68 (11th Cir. 2007) (citing Caulder v. Bowen, 791 F.2d 872 (11th Cir. 1986)). The court may remand a case to the Commissioner to consider evidence under sentence six, but only if the court "learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding." Id. (quoting Sullivan v. Finkelstein, 496 U.S. 617, 626, 110 S.Ct. 2658, 2664, 110 L.Ed.2d 563 (1990)). O*NET's description of "printing press operator" was available to Plaintiff at the time of the hearing, but Plaintiff did not submit the information for consideration. Consequently, the Court cannot consider O*NET for purposes of sentence four and may not remand to the Commissioner to consider whether O*NET's description of "printing press operator" conflicts with Plaintiff's ability to perform his past work under sentence six.

Plaintiff maintains that the ALJ's finding that he could perform his past work is inconsistent with Plaintiff's testimony that he has difficulty breathing around cleaning chemicals and must be out of the house when his wife cleans. This argument lacks merit. The ALJ noted on the record that Plaintiff's asthma was triggered by cleaning products. (Doc. 12-2, p. 12). But, after considering the evidence, the ALJ found Plaintiff's testimony not entirely credible. Thus, the ALJ's formulation of Plaintiff's residual functional capacity properly took Plaintiff's testimony into account. And, as noted above, the ALJ's finding that Plaintiff could perform his past work is consistent with Plaintiff's residual functional capacity. Accordingly, I recommend the Court affirm the Commissioner's decision on these grounds.

### B. O*NET and the DOT

Plaintiff next argues that the ALJ erred in relying on the VE's testimony, because the VE relied solely on the DOT, which is outdated and unreliable. This argument conflicts with the Code of Federal Regulations, which lists the DOT as an acceptable publication an ALJ may take notice of in forming his opinion whether certain jobs exist in the national economy. 20 C.F.R. §404.1566. O*NET, on the other hand, is not listed as an acceptable publication. See id. A printout from the Social Security Administration website which Plaintiff attached to his memorandum indicates that the Commissioner has deemed O*NET an unacceptable source:

> However, [the Department of Labor] stopped updating the DOT in 1991 and replaced it with the Occupational Information Network (O*NET), which was designed for training and career exploration. O*NET's definition of some occupation measures do not conform to requirements in our regulations, and we are not able to use O*NET in its current format in our disability adjudication process.

(Doc. 17-1 at 1).

Plaintiff argues that O*NET was formed using the "Occupational Outlook Handbook," which is recognized by the Code of Federal Regulation. Assuming this is correct, it does not change the fact that the DOT is still an acceptable source, and Plaintiff has not cited any Eleventh Circuit authority stating that an ALJ must consider more than the DOT in making his decision.[2] At least two courts in this Circuit, one in this District, have considered whether a court should remand for consideration of O*NET. Jordan v. Astrue, No. 2:11-cv-971-WKW, 2012 WL 6779419 *9 (M.D. Ala. Dec. 11, 2012); Strickland v. Astrue, No. 2:10-cv-306-FtM-DNF, 2012 WL 4048985 *11 (M.D. Fla. Sept. 13, 2011); see also Kestler v. Astrue, No. 2:10-cv-220-DNF, 2011 WL 4005898 *13 (M.D. Fla. Sept. 9, 2011). Both courts determined that remand was not warranted on this ground. Id.

Plaintiff cites the Sixth Circuit's unpublished decision by a divided panel in Cunningham v. Astrue, 360 F. App'x 606 (6th Cir. 2010). There, a VE testified to jobs described in the DOT which were later omitted from O*NET. The Sixth Circuit considered whether the jobs identified by the VE existed in significant numbers in the national economy and found that the VE's reliance on the DOT alone did not warrant a presumption of reliability. Cunningham, 360 F. App'x at 616. The court remanded the case for consideration of "whether the DOT listings . . . were reliable in light of the economy as it existed at the time of the hearing . . . ." Id. The dissent argued:

> It is not within this reviewing court's proper authority to locate evidence it thinks ought to have been taken into account by a better informed, more thoroughly prepared expert witness,

---

[2] Plaintiff states that the DOT is inconsistent with the Occupational Outlook Handbook, itself, but this argument does not change my analysis. The Code does not state, and I have found no law in this Circuit which states, that an ALJ must consider sources in addition to the DOT. By relying entirely on the VE's testimony, which is consistent with the DOT, the ALJ acted in accordance with the law.

- 8 -

> and to hold that the expert's failure to consider this court's more favored data effectively nullified the 'reliability' of the expert's opinion, rendering the entire body of otherwise 'substantial evidence' suddenly insubstantial.

Id. Ryan, J., dissenting.

This Court is not bound by the Sixth Circuit's opinion in Cunningham. And, at least two district courts in the Sixth Circuit have concluded that the decision did not hold the entirety of the DOT unreliable, but instead questioned the continued existence of the particular jobs listed by the VE in that case. See Petty v. Astrue, No. 2:12-cv-324, 2013 WL 3466851 *11-12 (E.D. Tenn. July 10, 2013); Earls v. Comm'r of Soc. Sec., NO. 1:09 CV 01465, 2011 WL 3652436 *7 (N.D. Ohio Aug. 19, 2011). These cases are persuasive. The Cunningham court did not hold that a VE could not rely solely on the DOT. The court remanded for consideration of O*NET because the jobs listed by the VE were found in the DOT but were omitted from O*NET, implying to the court that the jobs were obsolete. The present case is factually distinguishable, because O*NET lists "offset print operator" as a job under the heading "print workers." Accordingly, I recommend the Court find Cunningham v. Astrue distinguishable and unpersuasive, and that it find the ALJ did not err in relying on the VE's testimony.

### C. Number of Available Jobs

The ALJ found at step four of the five-step sequential evaluation process that Plaintiff had the residual functional capacity to do his past relevant work as an offset print operator and therefore, he is not disabled. (Doc. 12-2, p. 15). At this point, the ALJ's duty was complete. See 20 C.F.R. § 404.1520 (a)(iv) ("If you can still do your past relevant work, we will find that you are not disabled."). Nevertheless, the ALJ proceeded to step five. At step five, an ALJ may only decide that a claimant is not disabled if the ALJ

finds that a claimant is able to do work which exists in significant numbers in the national economy, either in the region where the claimant lives or in several regions in the country. 20 C.F.R. § 404.1512(f), § 404.1560(c), § 416.912(f) and § 416.960(c). Plaintiff argues that the Commissioner failed to make this showing. Specifically, Plaintiff maintains that: (1) providing national numbers does not satisfy the Commissioner's step five burden because it is against legislative intent; (2) the State of Florida does not constitute a region; (3) because Florida is a large state, relying on the number of jobs existing in Florida suffers from the same deficiencies as relying on the "national" numbers; (4) the term "several regions of the county" refers to the area within reasonable proximity to where claimant lives and the entire state of Florida cannot be within reasonable proximity; and (5) the number of jobs in the state of Florida provided by the VE is not "significant" because they represent a "very rare" .05-.07% of all the jobs in Florida.

Because the ALJ properly relied on the VE's testimony and found at step four that Plaintiff was not disabled, any error the ALJ may have committed in relying on the VE's testimony as to the number of other jobs available in the region or nationally would be harmless error. See 20 C.F.R. § 404.1520 (a)(iv) ("If you can still do your past relevant work, we will find that you are not disabled."). Alternatively, if the Court finds that the ALJ erred in deciding Plaintiff could perform his past work as an offset print operator, then the error at step four was harmless because the ALJ properly determined that Plaintiff could perform other work at step five for the reasons set out below. See Frizzo v. Astrue, No. 6:11-cv-1318-Orl-31TEM, 2012 WL 3668049 *12 (M.D. Fla. Aug. 7, 2012) (citing Tommassetti v. Astrue, 533 F.3d 1035, 1042 (9th Cir. 2008)).

At the administrative hearing, the VE testified that Plaintiff could perform the job of a packer with 195,395 jobs available nationally and 5,025 jobs in Florida and a server's

assistant with 94,722 jobs available nationally and 5,890 in Florida. (Tr. 41). Plaintiff maintains that providing national numbers does not satisfy the Commissioner's burden at step five because it is contrary to legislative intent. He argues that the phrase "in the region or in several regions of the country," was added to 42 U.S.C. § 423:

> to preclude from the disability determination consideration of a type or types of jobs that exist only in very limited number or in relatively few geographic locations in order to assure that an individual is not denied benefits on the basis of the presence in the economy of isolated jobs he could do.

H.R. Rep. No. 90-1030, p. 52; 20 C.F.R. § 404.1566(b).

Plaintiff asserts that national job figures may apply to only a relatively few geographic locations, which is contrary to what Congress intended. He also claims that because Florida is a large state, relying on the number of jobs in Florida suffers from the same deficiencies as relying on national numbers. This argument runs counter to Eleventh Circuit decisions which explain that "[t]he appropriate focus under the regulation . . . is the national economy. Thus, even if [the plaintiff's] evidence were credible to the lack of jobs in his geographic area, his failure to disprove the existence of such jobs on a national scale should leave the ALJ's finding intact." Allen v. Bowen, 816 F.2d 600, 603 (11th Cir. 1987).

Plaintiff also contends that the state of Florida does not constitute a region. He interprets "region where you live" to mean "immediate area," but he fails to explain his reasoning. His argument is inconsistent with the Code of Federal Regulation, which states that a job exists in the national economy when it exists in significant numbers in the region but stresses that it makes no difference whether "work exists in the immediate area in which you live." 20 C.F.R. § 404.1566(a). This suggests that a "region" is greater than the immediate area where a claimant lives. At least one other court in this district

has noted that there is no reason to believe a VE must identify jobs within the same Metropolitan Statistical Area as the claimant. Cousins v. Colvin, No. 2:12-cv-505-FtM-29DNF, 2013 WL 5278271 *8 (M.D. Fla. Aug. 23, 2013).

In support of his argument that "other regions in the country" means an area within reasonable proximity to a claimant, Plaintiff cites Barrett v. Barnhart, 355 F.3d 1065 (7th Cir. 2004). In Barrett, the Seventh Circuit held that the significant numbers evaluation comes down to whether a claimant is so disabled that there are no jobs that she is physically able to do in reasonable proximity to where she lives. 355 F.3d at 1067. In denying a motion to modify this statement, the Seventh Circuit made clear that its "reasonable proximity" language referred to the region where the claimant lives and not the "other regions" language used by the Code of Federal Regulation. Barrett v. Barnhart, 368 F.3d 691, 691 (7th Cir. 2004). The court explained its "reasonable proximity" language was "descriptive" and not meant to alter the statutory standard. Id. It clarified that "in our experience, and, it seems, in that of the other circuits as well, the vocational experts who testify in social security disability cases concerning the availability of jobs that the applicant has the physical ability to perform almost always confined their testimony to indicating the number of such jobs that exist in the applicant's state, or an even smaller area." Id. (collecting cases).

Contrary to Plaintiff's argument, the Seventh Circuit used "reasonable proximity" to describe the "region where the claimant lives," and the court acknowledged that a state could be reasonably proximate to satisfy the query. Other courts have found that the Commissioner can treat an entire state as a region. Pollice v. Sec'y of Health and Human Servs., 843 F.2d 1391, 1988 WL 28536 (6th Cir. 1988) (Table) ("We believe it is clear the term 'region' is flexible and that the Secretary did not err in considering the number of

jobs existing in the entire State of Michigan . . . . The fact that the statute speaks in terms of work existing in the national economy and does not restrict the Secretary to consideration of work that exists in the immediate area of a claimant's residence gives the Secretary sufficient latitude to treat an entire state as the region to be considered."); Trimiar v. Sullivan, 966 F.2d 1326, 1330 (10th Cir. 1992) (650-900 jobs within state of Oklahoma constituted significant number); Monroe v. Shalala, 55 F.3d 633 (5th Cir. 1995) (997 jobs in the state of Louisiana constituted significant number); Johnson v. Chater, 108 F.3d 178, 180 n.3 (8th Cir. 1997) (200 jobs in the state of Iowa qualified as significant number); see also Gutierrez v. Astrue, No. 1:11-cv-105 DLB, 2012 WL 259141 *4 (E.D. Cal. Jan. 26, 2012) (quoting Pollice, 1988 WL 28536, finding that 2,756 positions spread across California was significant number). Plaintiff has cited to no other case law to support his theory that Florida is not a "region" for purposes of the Code. For these reasons, Plaintiff's argument lacks merit.

Next, Plaintiff maintains that the number of jobs the VE identified in Florida are not "significant" because they represent a "very rare" .05-.07% of all jobs in the state. Plaintiff does not allege that the numbers presented by the VE are unreliable. The Code states that work exists in the national economy when it exists in significant numbers; it does not state that work exists when it constitutes a significant number of the jobs available in the region. Nowhere does the Code of Federal Regulation imply that "significant numbers" equals "significant percentage." As the Sixth Circuit stated in Hall v. Bowen, 837 F.2d 272, 275 (6th Cir. 1988), "when there is testimony that a significant number of jobs exists for which a claimant is qualified, it is immaterial that this number is a small percentage of the total number of jobs in a given area."

Plaintiff cites Beltran v. Astrue, 676 F.3d 1203, 1206 (9th Cir. 2010) (opinion amended and superseded on denial of rehearing by Beltran v. Astrue, 700 F.3d 386 (9th Cir. 2012)) in support of his argument. But, in Beltran, the Ninth Circuit did not decide that the 135 jobs available to the plaintiff was an insignificant number because it constituted a small percentage of the jobs available. 700 F.3d at 389. The court merely noted that 135 was a small percentage of the numbers the court had previously found to be significant. See id. (stating that 135 was 11% of the 1,266 found significant in Barker v. Sec'y of Health & Human Servs., 882 F.2d 1474, 1479 (9th Cir. 1989) and 2 to 4%[3] of the 3,750 and 4,250 available in Martinez v. Heckler, 807 F.2d 771, 775 (9th Cir. 1987)). Beltran did not make a comparison between the regional numbers listed by the VE in that case and the general number of jobs available in the region at the time of the hearing. Thus, Beltran is not applicable.

I find that the state of Florida accurately represents the region where Plaintiff lives and that 5,025 packer jobs and 5,890 server's assistant jobs in Florida constitute a significant number of jobs in the region. See Allen, 816 F.2d at 603 (holding that 174 local, 1,600 state, and 80,000 national jobs were a significant number); Bailey v. Astrue, 739 F.Supp.2d 1365, 1382-83 (N.D. Ga. 2010) (finding 3,500 jobs in Georgia to be a significant number); see also Trimiar v. Sullivan, 966 F.2d 1326, 1330 (10th Cir. 1992) (650-900 jobs within state of Oklahoma was significant number); Monroe v. Shalala, 55 F.3d 633 (5th Cir. 1995) (997 jobs in Louisiana was significant number); Johnson v. Chater, 108 F.3d 178, 180 n.3 (8th Cir. 1997) (200 jobs in Iowa was significant number); see also Gutierrez v. Astrue, No. 1:11-cv-105 DLB, 2012 WL 259141 *4 (E.D. Cal. Jan. 26, 2012) (quoting Pollice, 1988 WL 28536, finding that 2,756 positions spread across

---

[3] More accurately 3-4%.

California was significant number). Accordingly, I recommend the Court find substantial evidence exists to support the ALJ's decision that a significant number of jobs exist in the national economy in the region where Plaintiff lives.

### D. Obesity

Plaintiff alleges that the ALJ did not properly consider his obesity, either separately or in combination with his COPD and asthma. An individual is considered obese if his body mass index ("BMI") is over 30. (Doc. 17, p. 22). Plaintiff's BMI ranges from 31.2 to 31.9. (Id.). Social Security Ruling 02-01p provides that an ALJ should assess the effect obesity has on the claimant's ability to perform various exertional and nonexertional tasks. 2000 WL 628049 *6. In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. § 423(d)(2)(B).

Plaintiff did not allege disability due to obesity in his application, disability report, or at the administrative hearing. He has failed to identify any medical evidence showing he has greater limitations than what is provided in the ALJ's residual functional capacity determination and he does not argue that he suffers any distinct limitations due to his weight. He cites Kilmartin v. Astrue as support for his argument, but in Kilmartin the record was replete with examples of the claimant's obesity, and the claimant reported that his obesity caused distinct pain and limitations. No. 2:08-cv-661-FtM-DNF, 2010 WL 5070999 *5 (M.D. Fla. Dec. 7, 2010). The Eleventh Circuit and other courts in this district have found that an ALJ does not commit reversible error under circumstances nearly identical to this case. See James v. Barnhart, 177 F. App'x 875, 877 n.2 (11th Cir. 2006) (stating that the ALJ did not err in failing to find obesity to be severe impairment where the plaintiff did not complain that obesity was a functional impairment at her administrative

hearing); Freudenvoll v. Comm'r of Soc. Sec., No. 6:12-cv-467-ORL-22GJK, 2013 WL 388683 *11-12 (M.D. Fla. Jan. 9, 2013) adopted by 2013 WL 394012 (stating that although the ALJ did not mention the plaintiff's morbid obesity, the plaintiff did not mention his obesity on the record, and the ALJ considered all of the plaintiff's impairments in combination); Davis v. Astrue, No. 1:11cv17-WC, 2012 WL 39295 *4-5 (M.D. Ala. Jan. 9, 2012) (collecting cases).

Because Plaintiff did not allege that his obesity caused any limitations other than the limitations stated on the record and considered by the ALJ in formulating Plaintiff's residual functional capacity, I recommend the Court find the ALJ did not commit reversible error in failing to mention Plaintiff's obesity.

Plaintiff also maintains that the ALJ failed to discuss Plaintiff's "severe" airway obstruction listed in a Spirometry Report (Tr. 263). "[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable the district court . . . to conclude that the ALJ considered [his] medical condition as a whole. Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (quoting Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995) (internal quotations omitted). The ALJ's opinion is detailed enough for the Court to conclude that the ALJ properly considered Plaintiff's medical condition.

Lastly, Plaintiff contends that the ALJ placed undue reliance on the fact that he has not had an asthma attack in one and one-half years. Plaintiff states that he hasn't had an attack because he changed his lifestyle "to shelter himself from asthma attacks," his wife dusts every day, and he leaves the house when his wife cleans. (Doc. 17 at 22). The ALJ correctly noted Plaintiff's testimony that his last asthma attack was a year and half prior to the hearing. (Doc. 12-2, p. 12). The ALJ also considered Plaintiff's testimony that

cleaning products trigger his asthma. (Id.). Thus, the ALJ considered the pertinent testimony, and the Court cannot further consider Plaintiff's argument without "decid[ing] facts anew, reweigh[ing] the evidence, or substitute[ing] our judgment for that of the [Commissioner.]" Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996). Accordingly, I recommend the Court reject this argument.

### IV. Recommendations

Upon consideration of the foregoing, I respectfully recommend that:

1. the Commissioner's final decision in this case be **AFFIRMED**;

2. the Clerk be directed to enter judgment accordingly and **CLOSE** the file.

Specific written objections may be filed in accordance with 28 U.S.C. § 636, and M.D. FLA. R. 6.02, within fourteen (14) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking factual findings on appeal.

**RESPECTFULLY RECOMMENDED** in Orlando, Florida on October 10, 2013.

*[signature]*
THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record